RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0335p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DEMETREUS A. KEAHEY,

Petitioner-Appellant,

v.

DAVE MARQUIS, Warden,

Respondent-Appellee.

No. 18-4106

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:16-cv-01131—John R. Adams, District Judge.

Argued: October 7, 2020

Decided and Filed: October 20, 2020

Before: SILER, SUTTON, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Autumn Hamit Patterson, JONES DAY, Dallas, Texas, for Appellant. Mary Anne
Reese, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.
**ON BRIEF:** Autumn Hamit Patterson, JONES DAY, Dallas, Texas, Charlotte H. Taylor,
JONES DAY, Washington, D.C., for Appellant. Mary Anne Reese, OFFICE OF THE OHIO
ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Demetreus Keahey requested a self-defense instruction during

his state criminal trial for shooting Prince Hampton. The trial court rejected the request, and a

jury convicted Keahey of attempted murder among other charges. He filed this habeas petition, pressing the argument that the denial of the instruction violated his Sixth and Fourteenth Amendment rights. The district court denied the petition. We affirm because the state trial court's decision was not contrary to, and did not unreasonably apply, Supreme Court precedent.

I.

Keahey and Kindra McGill lived together with their daughter. Also living with them were two boys, the product of McGill's prior relationship with Prince Hampton.

One day, Hampton came to the house and became enraged because his boys were spending so much time with Keahey. He pulled out a knife, charged Keahey, and stabbed him in the back. Fearing retribution, Keahey never identified Hampton as his assailant. Neither did McGill.

Soon after the stabbing, McGill took the kids and moved in with her mother, Joyce. Keahey moved in with his sister. Keahey and McGill exchanged text messages, in which they discussed McGill's reluctance to name Hampton as the attacker and Keahey's desire to retaliate. Despite a criminal history that prohibited firearm possession, Keahey got a gun.

Weeks later, Keahey and McGill planned to meet at the doctor's office for their daughter's appointment. Without informing anyone, Keahey decided to pick up McGill and their daughter himself. Keahey showed up early that morning, parked on the street, and waited out front. Hampton arrived to drop his boys off before the doctor's visit, and pulled into the driveway with the kids in the car. The prosecution and Keahey paint different pictures of what ensued.

The prosecution points to evidence showing that Keahey arrived thirsting for a fight. He ignored the plan to meet at the doctor's office and showed up early and unannounced at Joyce's home that morning. Joyce testified that Keahey took aim and fired at an unarmed Hampton when he helped the kids exit the car, then chased a fleeing Hampton down the sidewalk. One officer testified that Keahey gave up an opportunity to return safely to his vehicle when he decided to chase after a fleeing Hampton. While an officer found a knife on the scene, it was

locked and closed, suggesting no one threatened Keahey with it. The police officer who canvassed the neighborhood discovered a bullet hole in Hampton's vehicle, another in a neighbor's living room, and shell casings scattered in the area. A neighbor observed two men running and one raising his arm as if to shoot, then heard a shot.

On the other side was Keahey's testimony that he shot Hampton in self-defense. Keahey testified that, while waiting out front for McGill and their daughter, Hampton arrived. He says Hampton jumped out of the car and charged at him with a knife. In response, Keahey fired back. Hampton bolted. Keahey scrambled. But before reaching his car, Keahey heard a gunshot and turned to see Hampton, gun in hand, coming down the driveway. To prevent Hampton "from getting a good shot off," Keahey fired more rounds. R.7-7 at 119. A neighborhood gun fight followed. After shooting Hampton twice, Keahey got in his car and sped off. Had he not shot Hampton, Keahey claimed, he would have "been dead." R.7-7 at 86.

Keahey sought a self-defense instruction, unsuccessfully. Even viewing the evidence in the defendant's favor, the Ohio trial judge reasoned, Keahey failed to present sufficient evidence to warrant the instruction.

On direct appeal, Keahey argued that the trial court's refusal to instruct the jury on self-defense violated state law and his Sixth Amendment and Fourteenth Amendment rights. The Ohio Court of Appeals rejected each of the arguments, once more for lack of evidence to support the instruction. *State v. Keahey*, 2014-Ohio-4729, 2014 WL 5421028, at *10 (Ohio Ct. App. Oct. 24, 2014). Keahey sought collateral relief in state court. That failed too.

Keahey filed a § 2254 habeas petition, claiming the state court violated his Sixth and Fourteenth Amendment rights by refusing to instruct the jury on self-defense. The district court rejected the claim. This court granted a certificate of appealability to review the claim.

II.

The Antiterrorism and Effective Death Penalty Act applies to the state court's decision that the Sixth and Fourteenth Amendments did not require it to give a self-defense instruction. *See* 28 U.S.C. § 2254(d). To prevail, Keahey must show that the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1); *see Harrington v. Richter*, 562 U.S. 86, 100 (2011).

*Contrary to federal law*. Keahey has picked a difficult hill to climb in claiming the jury instruction ruling was "contrary to federal law." It makes no difference whether the jury instruction misread state law because federal habeas applies only to convictions that offend "the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 71–72 (1991). That means he must show that the trial judge not only misread state law but also misread it so badly that it violated the Sixth and Fourteenth Amendments. That's not easy because "instructional errors of state law generally may not form the basis for federal habeas relief." *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993). Even after that, he must show that such a botched interpretation violated clearly established United States Supreme Court decisions. And even then, he still must show that the mistake violated concrete Supreme Court holdings, *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013), not generalized principles, *Woods v. Donald*, 575 U.S. 312, 318 (2015).

Keahey claims that two lines of cases help him. But neither one contains a holding on point that the state appellate court violated. Start with *Crane v. Kentucky*, 476 U.S. 683 (1986). It ruled that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," whether that right is "rooted directly in the Due Process Clause of the Fourteenth Amendment, . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment." *Id.* at 690 (quotation omitted). Defendants have used the principle to raise claims based on inconsistent jury instructions, *see Stevenson v. United States*, 162 U.S. 313 (1896), a capital defendant's right to a lesser included offense instruction, *see Beck v. Alabama*, 447 U.S. 625 (1980), the exclusion of evidence, *see Holmes v. South Carolina*, 547 U.S. 319 (2006), access to evidence, *see California v. Trombetta*, 467 U.S. 479 (1984), and the testimony of defense witnesses, *see Webb v. Texas*, 409 U.S. 95 (1972). But the Court has never invoked this principle to "squarely establish[]" a federal right to a self-defense instruction. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

Move to *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). It establishes a narrow category of state jury-instruction mistakes that violate the clearly established right to "fundamental fairness." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotation omitted); *Frey v. Leapley*, 931 F.2d 1253, 1255 (8th Cir. 1991); *Armstrong v. Bertrand*, 336 F.3d 620, 626 (7th Cir. 2003). To fit the theory, the state court's refusal to give the instruction must have "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. But the Supreme Court, regrettably for Keahey, has never invoked this principle in granting relief for the failure to give a self-defense instruction.

In the face of these precedents, Keahey has not shown that the state appellate court's decision was "contrary to" clearly established Supreme Court precedent. It neither "appl[ied] a rule that contradicts the governing law set forth in [Supreme Court] cases" nor arrived at a different conclusion after "confront[ing] a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quotation omitted).

*Unreasonable application of federal law*. Keahey does not do any better under the "unreasonable application" prong of AEDPA. That, too, is "difficult to meet." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation omitted). A "federal habeas court may not [grant relief] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). In "assessing whether a state court's application of federal law is unreasonable, the range of reasonable judgment can depend in part on the nature of the relevant rule that the state court must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quotation omitted). Both of the relevant standards in this instance—that a criminal defendant is guaranteed the opportunity to present a defense and that the trial must comport with fundamental fairness—lack "specificity." *Harrington*, 562 U.S. at 101. That left the state courts with considerable "leeway" when deciding whether to submit the charge to the jury. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Gauged by these modest requirements, the Ohio court of appeals' decision passes. It did not unreasonably apply either of the two relevant Supreme Court holdings in declining to instruct on self-defense. To our knowledge, the Court has discussed the denial of a state self-defense

instruction in the context of constitutional rights only once—as a hypothetical possibility and in a dissent no less. *Gilmore*, 508 U.S. at 359 (Blackmun, J., dissenting). The *Gilmore* majority rejected the argument that "the right to present a defense includes the right to have the jury consider it" because "such an expansive reading of our cases would make a nullity of the rule . . . that instructional errors of state law generally may not form the basis for federal habeas relief." *Id.* at 344; *White v. Woodall*, 572 U.S. 415, 427 (2014).

Because the Supreme Court has never clearly established Keahey's alleged constitutional right to a self-defense instruction and because the state court did not unreasonably apply the most relevant Supreme Court holdings, he has no basis for habeas relief under § 2254(d)(1). In rejecting a similar claim, the Seventh Circuit put it this way: Declining to grant a request to "present a state-created, not federally required, defense is, as a first approximation anyway, at worst merely to make an error of state law; and if there is one fixed star in the confusing jurisprudence of constitutional criminal procedure, it is that a violation of state law does not violate the Constitution." *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (en banc); *see also Engle v. Isaac*, 456 U.S. 107, 120–21 (1982); *Nickerson v. Lee*, 971 F.2d 1125, 1137–38 (4th Cir. 1992). And as our court has put it in the evidentiary context: A "habeas petitioner's challenge to an 'evidentiary ruling' cannot satisfy § 2254(d)(1) unless the petitioner identifies 'a Supreme Court case establishing a due process right with regard to [the] *specific kind of evidence*' at issue." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (quotation omitted).

By what measure anyway would federal courts gauge whether the state criminal defendant introduced enough evidence to have a federal right to a self-defense instruction? Would it be a "mere scintilla" of evidence supporting the defendant's theory? *See United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993) (quotation omitted). Adequate evidence to raise a factual question for a reasonable jury? *See United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996). Would "*some* evidence" do the trick? *See United States v. Scout*, 112 F.3d 955, 960 (8th Cir. 1997). No clearly established Supreme Court precedent gives an answer, confirming that the state courts did not unreasonably apply the relevant precedent.

Keahey offers several arguments in response, each unpersuasive. He starts with a precedent of our own, *Taylor v. Withrow*, which said that federal law guarantees a criminal

defendant the right to a self-defense jury instruction "when the instruction has been requested" and "there exists evidence sufficient for a reasonable jury to find in his favor." 288 F.3d 846, 851–53 (6th Cir. 2002) (quotation omitted). But as it happens, the habeas claimant did not obtain relief in the case, making this language unnecessary to the decision. *See Freeman v. Wainwright*, 959 F.3d 226, 230 (6th Cir. 2020). Our court has treated *Taylor*'s language as non-binding dicta over, *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003), and over, *Phillips v. Million*, 374 F.3d 395, 397–98 (6th Cir. 2004). No doubt some unpublished opinions treated *Taylor*'s language as a holding, even as they denied habeas relief. *See Horton v. Warden, Trumbull Corr. Inst.*, 498 F. App'x 515, 522 n.2 (6th Cir. 2012); *Neal v. Booker*, 497 F. App'x 445, 451 (6th Cir. 2012). But the paper of unpublished decisions cannot escape the scissors of published decisions on point.

Making matters more difficult for Keahey, the Supreme Court has been more explicit in its interpretation of "clearly established Federal law" since *Taylor*. *Woods*, 575 U.S. at 317–18; *Lopez v. Smith*, 574 U.S. 1, 5–7 (2014). What *Taylor* said then could not satisfy AEDPA today. It noted that "[t]here is no Supreme Court decision unmistakably setting down th[e] precise rule" over what to do with a denied self-defense instruction under state law. *Taylor*, 288 F.3d at 852. A point of law on which "no Supreme Court decision" exists is not the kind of claim that the Court welcomes today. "[T]he Sixth Circuit's reliance on its own precedents [cannot] be defended . . . on the ground that they merely reflect what has been clearly established by our cases." *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (quotation omitted).

Reliance on sister circuit decisions meets a similar fate. *See Lannert v. Jones*, 321 F.3d 747, 754 (8th Cir. 2003); *Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002); *Hagenno v. Yarborough*, 253 F. App'x 702, 704 (9th Cir. 2007). For "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court." *Knowles*, 556 U.S. at 122 (quotation omitted). Circuit precedent cannot "constitute clearly established Federal law, as determined by the Supreme Court." *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (quotation omitted); *Smith v. Cook*, 956 F.3d 377, 391 (6th Cir. 2020).

*Mathews v. United States*, 485 U.S. 58 (1988), doesn't advance Keahey's cause either. While it says that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," *id.* at 63, Keahey overlooks the reality that *Mathews* is not a constitutional case, *id.* at 66. The Court directly reviewed a district court's interpretation of federal common law, holding that a federal defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* at 62. That is a world of difference from a habeas challenge to a state court decision. The Court has never applied *Mathews* to any defense besides an entrapment defense, *see Hardy v. Maloney*, 909 F.3d 494, 500 (1st Cir. 2018), and it has never invoked the decision to overrule a state court ruling on habeas.

Last and least, Keahey contends that we are bound under the law-of-the-case doctrine by the certificate of appealability, which said that *Taylor*'s conclusion is a holding. As a general principle, the law-of-the-case doctrine precludes reconsideration of issues that were expressly or impliedly decided at an earlier stage of the same case by the same or a superior court. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *United States v. Moored*, 38 F.3d 1419, 1421–22 (6th Cir. 1994); Bryan A. Garner et al., The Law of Judicial Precedent 441 (2016). Application of the law-of-the-case doctrine has been historically limited to fully briefed "questions necessarily decided" in an earlier appeal, *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (quotation omitted), and has traditionally been used to "enforce a district court's adherence to an appellate court's judgment," *Miller v. Maddox*, 866 F.3d 386, 390 (6th Cir. 2017). It does not apply to a certificate of appealability, which screens out claims "unworthy of judicial time and attention," ensures "that frivolous claims are not assigned to merits panels," and identifies only questions that warrant the resources deployed for full-briefing and argument. *Gonzalez v. Thaler*, 565 U.S. 134, 145 (2012). In keeping with this duty, the issuing judge does not make binding legal determinations. Rule 27(c) of the Federal Rules of Appellate Procedure doesn't allow for that. It provides that "[a] circuit judge . . . may not dismiss or otherwise determine an appeal or other proceeding," and "[t]he court may review the action of a single judge." Fed. R. App. P. 27(c). Any other approach would mean that "the single judge would be vested with a power that Rule 27(c) expressly prohibits." *McCoy v. Michigan*, 369 F. App'x 646, 653 n.3 (6th Cir. 2010).

We affirm.