NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0408n.06

No. 19-3443

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BRIAN E. PORTER, | ) | **FILED** |
| | ) | Aug 27, 2021 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LASHANN EPPINGER, Warden, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Respondent-Appellee. | ) | OHIO |
| | ) | |

Before: CLAY, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Late one night at a bar in Cleveland, Brian Porter shot at a car leaving the parking lot. He was charged with assaulting three of the passengers. However, he was not charged with assaulting the fourth passenger, who, Porter claims, appeared to be brandishing a gun. At trial, Porter's main argument was that he acted in self-defense. The state trial court instructed the jury on self-defense, but the instruction explicitly named only the three victims listed in the indictment—not the person who allegedly had a gun. Porter was convicted on all counts. The Ohio Court of Appeals affirmed the conviction, finding that Porter was not entitled to a self-defense instruction in the first place because he had not satisfied his duty to retreat. Porter later filed a § 2254 habeas petition in federal district court. He argued that the self-defense instruction was incomplete under state law and that the error was so egregious that it violated his federal due-process rights. He also claimed that his trial counsel was unconstitutionally ineffective for failing to object to the incomplete instruction. The district court denied habeas relief. We AFFIRM.

I.

A.

Brian Porter was a regular at Andy's Hot Spot, a bar in Cleveland, Ohio. *State v. Porter*, 61 N.E.3d 589, 593 (Ohio Ct. App. 2016). One June evening in 2014, James Mechling, Richard Mechling, Ase Rollins, and Madeline Santiago (the Mechling group)[1] were at the same bar. *Id.* At one point in the evening, Ase and Madeline had some negative interactions with a man named Chino, who had criticized Madeline for dating "a white guy" (Ase) and later argued with Ase over a game of pool. *Id.* Porter was there that night, but he did not interact with the Mechling group until the end of the evening. *See id.* at 595–96.

At last call, James purchased a six pack of beer "to go" from the bar. *Id.* at 595. But rather than carrying it out, James opened one of the beers and immediately started to drink. *Id.* The bartender asked Porter to take the open beer from James so he could dump it out. *Id.* James became upset and began to argue with the bartender. *Id.* at 594–95. The bartender testified that, at some point during the exchange, James announced that he had a gun. *Id.* at 595. Porter and one or two other patrons ushered James and the rest of the Mechling group outside to the parking lot behind the bar. *Id.* Porter followed the group outside, claiming that he planned to move his car to the front of the building. *Id.* at 596.

At this point, the witnesses' stories diverge. Ase testified that the Mechling group was seated in Ase's car, preparing to leave, when Ase saw Chino approaching. *Id.* at 593. Ase stepped out of the car to confront Chino; the two instead had a brief exchange and shook hands. *Id.* According to Porter, however, the Mechling group stood outside Ase's car heckling Chino while

---

[1] Because the state court did the same, we will refer to all individuals, except Porter, by their first names.

Chino stood in the parking lot on his cell phone. *Id.* at 596. Porter says that the group told Chino that they were "going to 'F' him up." *Id.* Porter saw "someone from the [Mechling] group shut the trunk of Ase's vehicle" and surmised that they had removed something from the trunk. *See id.* Someone then shouted to Porter, "we're going to f*** you up too." *Id.* (alteration in original).

When he heard this, Porter reached into his car for his handgun. *Id.* Porter testified that he believed the back door of the bar was locked. He purportedly had told others to lock the door once the Mechling group was outside. As Porter was loading his gun, the group began to drive out of the parking lot, which required them to pass Porter and his car. *Id.* James was sitting in the driver's-side rear seat, which was closest to Porter. *Id.* Porter claims the group "pulled up a little slow," and then James said, "I told you I was going to f*** you up." *Id.* (alteration in original). Porter testified that he "saw something in [James'] hand" and "was scared from then [on]." *Id.* He did not know what the group might have removed from the trunk, but he had heard one member of the group say that he had a gun earlier in the evening during a game of pool. *Id.* Porter fired once at the car as it passed him. He fired a second time as the car left the parking lot and entered the street. Porter hit the car both times, but no one was injured. *Id.* at 593.

The security camera footage played at trial revealed that Porter had been standing in the parking lot next to his car for about thirty seconds before firing his gun. Porter admitted that twelve seconds had passed between the moment he reached for the gun and the moment he fired his first shot. *Id.* at 596. After the shooting, the video showed Porter high-fiving, fist-bumping, and hugging Chino and another person who had been inside the bar with them. *Id.* at 594. Porter contended that he was in shock and that the others were comforting him. The state, by contrast, argued that these actions were "celebratory." *Id.* at 598.

B.

Porter was charged with three counts of felonious assault in violation of Ohio Revised Code (ORC) § 2903.11(A)(2), one count each for assaulting Ase, Madeline, and Richard. *Id.* at 592–93. He was not charged with assaulting James. *See id.* Ohio defines felonious assault as "knowingly . . . [c]aus[ing] or attempt[ing] to cause physical harm to another . . . by means of a deadly weapon." ORC § 2903.11(A)(2).

The case proceeded to trial. *Porter*, 61 N.E.3d at 593. Porter presented the jury with two theories in favor of acquittal. First, he argued that he had acted in self-defense. Second, he argued that he had not knowingly attempted to harm anyone in the car when he shot at it. Perhaps unsurprisingly, Porter's counsel focused primarily on the self-defense theory.

Ohio law, at the time, required a defendant claiming self-defense to prove three elements by a preponderance: (1) that he "was not at fault in creating the situation giving rise to the fight," (2) that he "had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was through the use of force," and (3) that he "did not violate any duty to retreat or avoid the danger."[2] *Id.* at 597. The trial court agreed to instruct the jury on self-defense. The instruction said:

> In deciding whether the defendant has reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm, you must put yourselves in the position of the defendant with his characteristics, his knowledge or lack of knowledge and under the circumstances and conditions that surrounded him at that time.
>
> You must consider the conduct of Ase Rollins and/or Richard Mechling and/or Madeline Santiago and determine if their acts and words caused the defendant reasonably and honestly to believe that he was about to be killed or receive great bodily harm.

---

[2] In 2019, Ohio abandoned the common law rule that the defendant bears the burden of proving self-defense. *See* ORC § 2901.05(B)(1) (2019). In 2021, Ohio eliminated the duty to retreat. *See* ORC § 2901.09. These changes have no effect on Porter's case.

*Id.* at 596. The instructions did not mention James, but they did not explicitly tell the jury to ignore James either. Porter's attorney did not object to the self-defense instructions. During closing arguments, both parties presented arguments to the jury about Porter's claim that he had been defending himself against James.

The jury convicted Porter on all counts. *Id.* The trial judge sentenced him to six years' imprisonment. *Id.*

### C.

Porter appealed. He argued, among other things, that the self-defense instruction was incomplete because it did not allow the jury to consider Porter's alleged fear of James. He contended that failing to name James in the instruction violated his Sixth and Fourteenth Amendment rights "to a fair trial and adjudication, . . . to present a defense, and to due process." Porter also argued that his trial counsel had been unconstitutionally ineffective for failing to object to the self-defense instruction.

A divided panel of the Ohio Court of Appeals rejected these claims and affirmed Porter's convictions. *See id.* at 596–99, 603. The court first noted that Porter had not objected to the jury instruction below and thus "forfeited all but plain error on appeal." *Id.* at 597. The court went on to say that Porter "ha[d] not shown that he did not violate a duty to retreat or avoid danger." *Id.* at 598. "Porter admitted at trial that approximately 12 seconds [e]lapsed between the time James allegedly threatened him while standing outside Ase's vehicle and the time Porter pulled the trigger." *Id.* The state court concluded that "12 seconds was long enough for Porter to retreat." *Id.* It offered a lengthy string citation to other Ohio Court of Appeals decisions concluding that a defendant had violated the duty to retreat. *Id.* at 598–99. The court was "unable to conclude that the [trial] court's failure to list James in its self-defense instruction rose to the level of plain error."

*Id.* at 599. The court also observed that, even though "the instruction was arguably incomplete," this did not matter because "Porter ha[d] not demonstrated a reasonable probability that the instruction affected the outcome of trial." *Id.* In the appellate court's view, "a finding of self-defense [was] simply not appropriate under the facts." *Id.*

With respect to Porter's ineffective-assistance claim, the Ohio Court of Appeals first explained the relevant legal standard in full. *See id.* at 603 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Then, it reasoned as follows:

> Based on our resolution of Porter's first . . . assignment[] of error, we are unable to conclude that defense counsel rendered ineffective assistance . . . by failing to object to the challenged instructions. As this court has stated, "*counsel cannot be deemed ineffective merely for failing to raise a meritless objection*." Accordingly, Porter's ineffective assistance of counsel claim is without merit.

*Id.* (emphasis added) (internal citation omitted).

Porter appealed to the Ohio Supreme Court, which declined discretionary review. *State v. Porter*, 52 N.E.3d 1204 (Ohio 2016) (table). The United States Supreme Court denied Porter's petition for certiorari. *Porter v. Ohio*, 137 S. Ct. 654 (2017).

D.

Porter filed a timely pro se habeas petition in federal district court under 28 U.S.C. § 2254. His petition asserted several grounds for relief, including the present jury-instruction and ineffective-assistance claims. The district court held that Porter's jury-instruction claim was defaulted, without excuse, and that his ineffective-assistance claim failed on the merits under the Antiterrorism and Effective Death Penalty Act (AEDPA). The district court declined to issue a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c).

Porter then obtained a COA from this court. *Porter v. Eppinger*, No. 19-3443 (6th Cir. Dec. 18, 2019) (single-judge order). The present appeal followed.

II.

On appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its findings of fact for clear error. *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). When a state court has adjudicated a claim on the merits, federal courts are constrained by 28 U.S.C. § 2254(d). *Kendrick v. Parris*, 989 F.3d 459, 468 (6th Cir. 2021). Relevant here, § 2254(d)(1) permits us to grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If a claim that was not adjudicated on the merits in state court is nevertheless entitled to merits review on habeas, we review the claim de novo. *See Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006).

III.

Porter contends that the state trial court erred by not mentioning James explicitly in the self-defense instruction. Whether this jury instruction was proper is a question of state law, which "generally may not form the basis for federal habeas relief." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020) (quoting *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993)). But Porter argues that he is entitled to habeas relief nonetheless because the alleged instructional error "so infected the entire trial that the resulting conviction violates" his federal constitutional right to due process. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). We disagree.

A.

As an initial matter, Porter admits that his jury-instruction claim is procedurally defaulted because his counsel failed to raise it at trial. Porter argues, however, that he can show cause and prejudice to excuse the default because his trial counsel was unconstitutionally ineffective for

failing to raise this objection. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (explaining that ineffective assistance of counsel can excuse procedural default).

Ordinarily, procedural-default questions come first in our analysis. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). But here, the claimed excuse for the default is tangled up with the merits. We cannot decide whether trial counsel was ineffective for failing to challenge the jury instruction without first deciding whether the challenge to the jury instruction would have had merit. *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015); *McLemore v. Bell*, 503 F. App'x 398, 404 (6th Cir. 2012). In such circumstances, we may avoid the potentially duplicative analysis by considering the merits first. *See Lambrix*, 520 U.S. at 525; *Wade*, 785 F.3d at 1077; *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009). Here, even if we ignore the default of this claim, it does not provide a viable basis for habeas relief.

B.

Proceeding to the merits, we must decide whether Porter's claim is subject to AEDPA's exacting standard of review. AEDPA applies when a state court has adjudicated a claim "on the merits." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 92 (2011). We presume that state courts have reached the merits of a claim unless they have made a "plain statement" to the contrary. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Stermer v. Warren*, 959 F.3d 704, 722 (6th Cir. 2020). We defer to a state court's merits determination even if the state court makes an alternative holding on procedural grounds. *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010); *Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008).

Here, the Ohio Court of Appeals held that Porter had defaulted his jury-instruction claim by failing to object at trial. *Porter*, 61 N.E.3d at 597. Applying plain error review, the state court concluded that there was no "reasonable probability" that the verdict would have been different

with Porter's preferred instruction. *Id.* at 599. The court further concluded that "a finding of self-defense [was] simply not appropriate under the facts of this case." *Id.* The court later stated, in discussing Porter's ineffective-assistance claim, that any objection to the jury instruction would have been "meritless." *Id.* at 603 (citation omitted); *see Hodge v. Haeberlin*, 579 F.3d 627, 643–44 (6th Cir. 2009) (recognizing that a state court's resolution of an issue in the context of a different claim can still trigger AEDPA deference). Thus, the Ohio Court of Appeals decided that Porter was not entitled to any self-defense instruction as a matter of state law.

Even though the Ohio Court of Appeals did not discuss federal due process specifically, that is no matter here. When a state court denies relief after discussing only state law, "the federal claim may be regarded as having been adjudicated on the merits" if "the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard." *Johnson v. Williams*, 568 U.S 289, 301 (2013); *see Bennett v. Brewer*, 940 F.3d 279, 290–91 (6th Cir. 2019). Porter's federal claim is essentially that, in crafting the self-defense instruction, "the trial judge not only misread state law but also misread it so badly that it violated the Sixth and Fourteenth Amendments." *See Keahey*, 978 F.3d at 478. Such a constitutional claim requires a particularly egregious error of state law. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (explaining that the inquiry is "not merely whether the instruction is undesirable, erroneous, or even universally condemned" but "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" (internal quotation marks and citations omitted)). The Ohio Court of Appeals' conclusion that it was not error to give a self-defense instruction that did not name James—indeed, that Porter was not entitled to any self-defense instruction at all— necessarily negates the more demanding federal claim. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (denying habeas relief where the state court relied solely on state law, which provided

"even *greater* restrictions for the avoidance of" a constitutional defect than federal law provided); *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (similar).

As such, the Ohio Court of Appeals rejected Porter's jury-instruction claim on the merits. AEDPA governs our review of this claim.

C.

Under AEDPA, Porter must show that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the concrete holdings of the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1); *Woods v. Donald*, 575 U.S. 312, 315–16, 318 (2015) (per curiam); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Keahey*, 978 F.3d at 478–79. Because his self-defense argument rested entirely on his belief that James had brandished a gun, Porter claims that the failure to name James in the self-defense instruction deprived him of his due-process right to a fair trial. Yet, Porter has failed to show a violation of clearly established federal law and, thus, is not entitled to habeas relief.

A state decision is "contrary to" clearly established federal law if the state court applies a legal test that contradicts the relevant rule set forth in then-existing Supreme Court holdings or if it reaches a result different than the Supreme Court's when applying the rule to "materially indistinguishable" facts. *Williams*, 529 U.S. at 405–06. Porter does not argue that the Ohio Court of Appeals misstated any Supreme Court holdings related to his jury-instruction claim. Nor does he argue that the court's decision produced a result different from one reached by the Supreme Court on materially identical facts. Thus, to prevail, Porter needs to show that the Ohio Court of Appeals unreasonably applied clearly established federal law when it rejected this claim.

An unreasonable application of clearly established federal law must be "so lacking in justification that" it results in "an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Richter*, 562 U.S. at 103). "[C]lear error" is not enough. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The state court's application of the clearly established law must have been "objectively unreasonable." *Id.* at 76.

The Supreme Court has cautioned lower courts not to view its holdings "at too high a level of generality" in deciding what law is clearly established. *Woods*, 575 U.S. at 318. Rather, "[t]he more general the [legal] rule, the more leeway [state] courts have in" applying it case-by-case. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). No "specific legal rule" has been "squarely established" that determines when—if ever—the Constitution guarantees state defendants the right to a self-defense instruction. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see Keahey*, 978 F.3d at 479.

The Due Process Clause "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). But habeas relief is not available just because a jury instruction contradicted state law. *See Gilmore*, 508 U.S. at 344. Rather, to provide a basis for habeas relief, the erroneous instruction must, "by itself[,] so infect[] the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147; *Wheeler v. Simpson*, 852 F.3d 509, 519 (6th Cir. 2017); *see also Gilmore*, 508 U.S. at 344 (rejecting the argument "that the right to present a defense includes the right to have the jury consider it").

The Supreme Court has emphasized that the category of jury instructions that rise to the level of violating due process is to be drawn "very narrowly." *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). The burden of showing such a violation "is even greater than the showing required to establish plain error on direct

appeal." *Henderson*, 431 U.S. at 154; *Wheeler*, 852 F.3d at 519. This "burden is 'especially heavy' here given that '[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Jacobs v. Sherman*, 301 F. App'x 463, 468 (6th Cir. 2008) (alteration in original) (quoting *Henderson*, 431 U.S. at 155).

No clearly established law indicates that the jury instruction given here violated the federal Constitution. As we recently pointed out in *Keahey v. Marquis*, the Supreme Court has never established a federal standard by which to test a state court's decision on whether to give a self-defense instruction. 978 F.3d at 479. Supreme Court precedent gives no measuring stick by which to "gauge whether the state criminal defendant introduced enough evidence to have a federal right to a self-defense instruction"; nor has it established that such a right even exists. *See id.*

Porter argues that *Keahey* is distinguishable. In *Keahey,* the court gave no self-defense instruction at all; whereas in Porter's case, the trial court gave an instruction that was purportedly "incomplete" and "so misleading" as to negate his lone defense, and also his due-process rights. Even so, the analogy to *Keahey* persists. Porter fails to identify (and we cannot locate) any Supreme Court precedent describing just how misleading a self-defense instruction needs to be before it becomes *unconstitutionally* misleading. And without such precedent, we may not grant relief. "[R]eliance on the general rule that the Due Process Clause prohibits 'fundamentally unfair' procedures—without a specific Supreme Court holding covering the type of due-process error [Porter] asserts—would allow courts to 'transform even the most imaginative extension of existing case law into clearly established Federal law, as determined by the Supreme Court.'" *Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020) (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)).

Moreover, we do not review the trial court's decision; we review the last reasoned state-court decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991). Here, that is the decision of the Ohio Court of Appeals, which said that omitting a specific reference to James was no error at all because no self-defense instruction should have been given on these facts. *Porter*, 61 N.E.3d at 599, 603. The state court was not required to offer reasons for its conclusion, *see Richter*, 562 U.S. at 100, but it did. It emphasized Porter's admission that twelve seconds had elapsed between the moment the Mechling group allegedly told him they would "f*** [him] up too" and the moment Porter fired his first shot. *Porter*, 61 N.E.3d at 596. Porter followed the Mechling group into the parking lot even though he knew the group claimed to have a gun and even though he had just been involved in an argument with some of the members and had forced them out of the building. *Id.* Rather than trying to leave the parking lot—by getting in his own car and driving away or by walking to the front of the building—Porter went straight for his gun. *Id.*

On these facts, the Ohio Court of Appeals concluded that Porter had failed to provide evidence that he had fulfilled his duty to retreat as a matter of state law. And so, the appellate court determined that there should not have been an instruction at all. Federal courts are bound by "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see Estelle*, 502 U.S. at 67–68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citing *Murdock v. City of Memphis*, 87 U.S. (20 Wall.) 590 (1875); and *Winter v. New York*, 333 U.S. 507 (1948)); *McMullan v. Booker*, 761 F.3d 662, 668 (6th Cir. 2014) ("We owe considerable deference to state courts in the application of their own law." (internal quotation marks and citation omitted)); *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("Principles of comity require federal courts to defer to a state's judgment on issues of state law . . . ."). Absent clearly established federal law

commanding the opposite result, we have no basis for disturbing the state appellate court's application of Ohio law.

Porter searches for contrary support in *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999). There, he notes, we granted habeas relief where the "jury was . . . plainly misinstructed on a matter critical to [the] defense." *Id.* at 876. But *Barker* only illustrates our point. In *Barker*, the Michigan Supreme Court had already held that the instruction was erroneous under state law. *Id.* at 870. We were obliged to respect the state court's application of its own law in *Barker*, just as we are here. *See Richey*, 546 U.S. at 76; *Israfil*, 276 F.3d at 771. The issue on habeas review in *Barker* was the state court's determination that any error was harmless. 199 F.3d at 871–72. *Barker* gives us no license to disturb the Ohio Court of Appeals' conclusion that Porter should not have received any self-defense instruction under state law.

No clearly established federal law allows us to upend the state court's decision. We therefore affirm the denial of habeas relief on Porter's jury-instruction claim.

IV.

Porter's second claim is that his trial counsel was unconstitutionally ineffective for failing to object to the self-defense instruction's omission of James. The Ohio Court of Appeals held that Porter was not entitled to any self-defense instruction, and that counsel could not have been unconstitutionally ineffective for failing to make a "meritless" objection. *Porter*, 61 N.E.3d at 603 (citation omitted). That was a decision on the merits. Therefore, § 2254(d) restrains our review of this claim as well.

Porter points solely to *Strickland v. Washington*, 466 U.S. 668 (1984), as the relevant clearly established law. Under *Strickland*, counsel's failure to object would be unconstitutionally ineffective if (1) it "fell below an objective standard of reasonableness," and (2) "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. Porter needs to show that the state court's decision "was contrary to" or "involved an unreasonable application of" *Strickland*. 28 U.S.C. § 2254(d)(1). This he cannot do.

It is elementary that counsel cannot be ineffective for failing to raise a meritless objection. *Bennett*, 940 F.3d at 286, 291; *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Porter does not challenge that basic principle. Instead, he attacks the state court's underlying conclusion that an objection would have lacked merit.[3] But we have already explained that no clearly established federal law allows us to disturb the Ohio Court of Appeals' holding that an objection would have been meritless. Accordingly, the district court properly denied relief on Porter's ineffective-assistance claim.

\* \* \*

We AFFIRM.

---

[3] Porter also argues that the state court misstated the prejudice prong of *Strickland*, rendering the decision "contrary to" federal law. He points out that the Ohio Court of Appeals, at one point, discussed whether a reasonable jury "could" find that he violated his duty to retreat and lacked an honest or reasonable fear of imminent bodily harm. *See Porter*, 61 N.E.3d at 598–99. If the state court had described the prejudice prong in this way, Porter might have a point. *Strickland* requires a "reasonable probability" of a different outcome and does not merely ask what a reasonable jury could find. 466 U.S. at 694. But Porter misreads the Ohio Court of Appeals' decision. The court's discussion about what a reasonable jury "could" find occurred in a separate section of the opinion, which dealt with the jury-instruction claim under plain-error review. That was not part of the ineffective-assistance analysis. *See id.* at 602–03. Moreover, the prejudice prong plays no material role here. The state court concluded that counsel could not have been deficient for failing to make a "meritless" objection. *Id.* at 603 (citation omitted); *see Coley*, 706 F.3d at 752 ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").