## Sizemore v. Commonwealth.

Jan. 17, 1941.

144

Isaac Turner for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The legislature of Kentucky enacted chapter 47, page 286, of the Session Acts of 1938, the general title to which is: "An Act prohibiting the operation of road-houses, tourist camps, places of public entertainment without a permit from the county court," etc. Following that general statement in the title is a more or less detailed rehearsal of other provisions of the act relating to procedure, enforcement provisions, prosecutions, punishments, etc. The act is now Sections 1599f-1 to and including Section 1599f-15 of Baldwin's 1939 Service Supplement to Carroll's Kentucky Statutes. The first section of the act (Section 1599f-1 in the Supplement referred to) says: "That no roadhouse or place offering for sale nonintoxicating, or intoxicating drinks, tourist camps or place of public entertainment at which people assemble to eat, drink, dance, bathe or engage in any game or entertainment, shall be permitted in the Commonwealth of Kentucky outside of the corporate limits of any incorporated city or town unless its owner or proprietor shall have a permit issued to him by the county court in the county in which it is located granting to him the privilege and license to operate said place of business in said county."

The grand jury of Leslie county returned an indictment accusing the appellant and defendant therein of having violated the inserted section of the act and it averred that the place where defendant conducted her business was in territory outside of the limits of any incorporated city or town, since the forbidden operation is confined to only such outlying territory. However, the indictment did aver that the business of defendant, so claimed to have been unlawfully and illegally operated, was conducted in the town of Hyden, the county seat of Leslie county, and on premises adjoining the courthouse grounds. Her business purported to be that of a restaurant operator, at which she sold soft drinks,

cigars, cigarettes and furnished meals and food for customers. She had two daughters, who were in their teens, and who assisted her in conducting the business. There was a painted sign over the front, or entrance door, indicating that the restaurant was owned and operated by those two daughters; but defendant admitted on the stand that she was the owner and proprietor of the business. At her trial under a plea of not guilty she was convicted and fined $200, upon which the court pronounced judgment after overruling her motion for a new trial. From the verdict and the judgment so pronounced thereon she has filed a transcript of the record in this court with a motion for an appeal, which motion is now sustained and the appeal granted.

A number of grounds are argued in brief for appellant as sufficient reasons to authorize a reversal of the judgment, but, since we have concluded that one of them is all-sufficient for that purpose, we will devote neither time nor space to a consideration of the others, each of which, however, we conclude are immaterial, and some of which are not preserved or presented in a manner authorizing our determination of them.

From a reading of the statute it will be seen that the location of the business to which the statute applies is an essential element of the offense with which defendant is accused. We have not access to the latest census reports as to the inhabitants of the town of Hyden, but we have seen the one of 1920 which gave it as five hundred. The county of Leslie was created in 1878 by an act of the legislature, and Hyden was then a town and it was made the county seat of the county by that act, and which has remained unchanged since then. By chapter 488, on page 891 of the Session Acts for 1881-82 the town of Hyden was incorporated and provisions were made therein for its municipal officers, and the conduct of its local municipal government. The town has never been specifically designated as belonging to any of the six classes of municipalities of the commonwealth, but, of course, it is embraced in the general statement found in Section 2741 of our present statutes saying: "All other incorporated cities and towns not named in this bill shall belong to the sixth class," etc. Under our present law relating to municipally incorporated towns not specifically classified by the statute which were incorporated at the time of the enactment of our present

statute dealing with the subject—eo instanter became towns or cities of the sixth class, and any town having a population of as much as or more than one hundred and twenty-five inhabitants might become incorporated as a town of that class by following the provisions of the statute. Hyden having been incorporated prior to the adoption of our present Constitution, and prior to the enactment of our present statutes relating to municipalities, remained incorporated and was so at the time our present statute was enacted. By the express terms of the latter (inserted above) it then became a town of the sixth class and remained such thereafter, unless in some manner it abandoned or forfeited its corporate capacity.

In the case of Cincinnati, N. O. & T. P. Ry. Company v. Baughman, 116 Ky. 479, 76 S. W. 351, 352, 25 Ky. Law Rep. 705, we held that a town of the sixth class which had not for a continuous period of more than *seventeen* years elected municipal officers, or exercised any of the governmental functions of a municipality as authorized by its charter, thereby forfeited its charter priviliges and ceased to be a municipality—the opinion saying: "We are of the opinion that it is conclusively shown that Tunnel City had for more than 17 years failed to exercise any of the governmental functions granted to it by the act of 1878, and that the magistrate in whose district the offense was committed had jurisdiction to try the offender."

In the case of Hill v. Anderson, 122 Ky. 87, 90 S. W. 1071, 1072, 28 Ky. Law Rep. 1032, where the question of charter forfeiture was again presented to this court we, in our opinion, referred to and quoted with approval from Dillon on Municipal Corporations, Section 110, in which this statement appears: "The officers are their [the people's] agents or servants, but do not constitute an integral part of their corporation, the failure to elect whom may suspend the functions, but will not dissolve the corporation." The opinion then continues by saying: "It is therefore immaterial that the town of Weston has not kept up its corporate organization, or that for 17 years it has been without corporate authorities." Whatever contradiction, if any, that may be found in the holdings of these two opinions, they at least agree on one point, and which is that the abandonment of corporate privileges, or the exercise of munici-

pal governmental functions must continuously exist without interruption for a period of more than seventeen years before forfeiture will be effected.

The only testimony introduced or offered at the trial, remotely or otherwise bearing on the question of forfeiture of charter privileges by the town of Hyden, was given by Carl Farmer, a witness introduced by the commonwealth, whose entire testimony on that point was and is:

"Q. Was there any kind of city officials in this town then? A. It was just like it is now.

"Q. Do you have any information that there has ever been any kind of police force or town council in this town? A. I have heard there has been.

"Q. Is there a policeman here now? A. No.

"Q. Was there any sort of police force or any type of city government here at that time? A. No.

"Q. You don't know whether the corporate laws are dead or just quit functioning, do you? A. No."

Not a breath was breathed by any other witness even remotely touching that vital fact, and from the inserted excerpts supra it most demonstrably appears that the proven neglect on the part of the municipality to fill its municipal offices, or to function as a municipal government, by no means measured up to the requirements stated in our two opinions referred to. There is no pretense at showing when such abandoning acts or neglect on the part of the inhabitants of the municipality began, or how long they continued, and the only point of certainty contained in the inserted evidence of Farmer was that at the time he testified—and at the time of the occurrences to which he testified—there was then no municipal officer functioning within the limits of the originally incorporated town of Hyden. That wizened testimony would have to be promoted or strengthened to even approach sufficient materiality or weight upon which a finding that a forfeiture of the incorporation could be based, either under the rule announced in our opinions supra, or under the provisions of Section 2741c-1 of our present Statutes, which is a part of chapter 152, page 654 of the Session Acts of 1918. That section provides, in substance, that if a municipality in this Commonwealth should fail for a period

of one year to maintain its city government by the election of officers or levying and collection of taxes "its charter shall be forfeited." But the next succeeding section (2741c-2, the two sections constituting the entire act) clearly demonstrates that Section 1 of the act (2741c-1) only provided a remedy whereby the charter rights of the negligent town or city might be forfeited in a proceeding instituted for that purpose by someone having the right to do so. The first section of the act is, therefore, not self-executing, and did not prescribe for an ipso facto forfeiture as a result of such negligent failures. No effort was made to prove a forfeiture of charter rights of the town of Hyden pursuant to the provisions of the 1918 act, (being the two sections above referred to). Since, therefore, one of the essential elements to establish guilt of defendant was wholly and entirely unproven, it was the duty of the court to so instruct the jury, and for its failure to do so the judgment will have to be reversed.

But it is insisted by learned counsel for the commonwealth that the motion for a new trial was not made a part of the bill of exceptions and, therefore, the ground above discussed can not be considered. The error in that contention is that there is no requirement of the practice that the motion for a new trial shall be made a part of the bill of exceptions. When filed by an order of court it becomes ipso facto a part of the record and need not be incorporated in the bill of exceptions in order to be considered by this court on appeal.

It is furthermore insisted by the same counsel that there was no motion made by defendant for a peremptory instruction of acquittal, and for which reason the failure to prove the offense as we have above outlined and pointed out, may not be considered by us because the insufficiency of the proof was waived by the failure of defendant to so practice the case as to preserve the question for this court's consideration. Two answers to that contention are available, and which are: (1) That this Court in a criminal prosecution (and, perhaps, also in a civil case) will not permit a judgment to stand when no facts are proven upon which the right to it may be based, and (2) that in a criminal prosecution it is the duty of the Court to give all instructions that the testimony authorizes from any viewpoint, whether the defendant asked for them or not. Under that rule it

was the duty of the Court to give a peremptory instruction regardless of the fact that defendant did not request it; provided the testimony did not prove a public offense, and which, as we have seen, was true in this case.

Wherefore, the appeal is granted and the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.