NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0065n.06

No. 20-5918

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

WILLIAM O. AYERS,

        Petitioner-Appellant,

v.

ERICA HARGIS, Director, Division of Probation and Parole, Kentucky Department of Corrections; DANIEL J. CAMERON, Kentucky Attorney General,

        Respondents-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 04, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

Before: SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge**. Petitioner William Otto Ayers appeals the district court's denial of his petition for writ of habeas, 28 U.S.C. § 2254. On June 11, 2012, Ayers was found partially undressed in a vacant lot, and a known prostitute was seen leaving the area. He was arrested and later charged with trespassing, loitering for prostitution purposes, and failing to show his license on demand. Ayers went to trial and the prostitute testified in graphic detail about his encounter with Ayers. At the close of the prosecution's case, the trial court granted Ayers' motion for a directed verdict on the prostitution charge. The jury subsequently returned a verdict of guilty on both of the remaining charges. Kentucky courts affirmed his convictions. Ayers then filed a habeas petition in the Western District of Kentucky arguing that the trial court should have

instructed the jury, *sua sponte*, that Ayers was acquitted of the prostitution charge. The district court denied habeas relief. We AFFIRM.

## I. BACKGROUND

### A. Factual Background

In the early hours of June 11, 2012, the Louisville Police Department was notified of a suspicious vehicle parked in a vacant lot in Louisville, Kentucky. Officers Kyle Ott and Chad Stewart were dispatched to the lot, and as they neared, they noticed Charles Griffin, a known prostitute, leaving the area. Griffin was never seen in the lot.

Officers Ott and Stewart approached a running pick-up truck parked beneath a tree. Petitioner William Otto Ayers ("Ayers") emerged from the vehicle shirtless and with his pants unbuttoned. Officers asked Ayers how he got to the vacant lot, and he stated that he drove himself. Ayers explained that he had a "fetish" for rain, so he ate a large spaghetti dinner and drove to a vacant parking lot to wait for a thunderstorm. Ayers stated that because he was uncomfortable from his dinner, he removed his shirt and unbuttoned his pants. The officers also asked to see Ayers' driver's license, but he did not have it in his possession. In fact, Ayers was not a licensed driver in any jurisdiction that night.

The officers told Ayers that he was on private property and needed to leave. They offered to let Ayers walk away from the lot, call someone to pick him up, or ride with the officers to his destination of choice. Ayers adamantly refused to leave unless he could drive his pick-up truck off the lot because he did not want his vehicle towed. However, because he had no license, the officers refused to let him move the truck. Ultimately, Officers Ott and Stewart arrested Ayers.

B. Procedural Background

Ayers was charged with (1) criminal trespass in the third degree, Ky. Rev. Stat. § 511.080; (2) loitering for prostitution purposes, *id*. § 529.080; and (3) license to be in possession and to be shown on demand, *id*. § 186.510. He opted for a jury trial before the Jefferson District Court.[1] For reasons not explained in the record, it ended in a mistrial. At a hearing outside the presence of the jury, Griffin testified in detail that a sexual encounter with Ayers had occurred on the night of Ayers' arrest, noting specifically that Ayers was the patron rather than the prostitute. Ayers then moved to dismiss the prostitution charge arguing that the statute applied only to prostitutes. The Jefferson District Court denied his motion and allowed all three charges to proceed to a second trial.

At the second trial, Griffin again testified to the graphic details of his encounter with Ayers, this time before the jury. At the close of the prosecution's case, Ayers moved for a directed verdict on the prostitution charge, again arguing that the statute did not apply to him as the patron. The Jefferson District Court granted Ayers' motion and entered a directed verdict on the prostitution charge. Then, the prosecution—not Ayers—asked how the court would address the directed verdict to the jury. The district court judge replied, "I don't. I won't." (Trial Ct. Video Transcript, 10/2/2014, 02:36:23.) Ayers never mentioned the issue again.

Ayers then testified in his own defense. During cross-examination he admitted that he drove to the vacant lot, which he knew did not belong to him, that he did not produce a driver's

---

[1] In Kentucky, there are four levels to the judiciary relevant to this case: the Jefferson District Court, the Jefferson Circuit Court, the Kentucky Court of Appeals, and the Kentucky Supreme Court. The Jefferson District Court is a trial court that handles criminal cases that only include misdemeanors and violations, whereas the Jefferson Circuit Court is a trial court that handles cases that include felony charges. Additionally, defendants have a right to appeal Jefferson District Court decisions to the Jefferson Circuit Court. Further appeals to the Kentucky Court of Appeals and the Kentucky Supreme Court are discretionary.

license, that the officers told him he was required to leave, but he refused unless he could drive himself, and that he was arrested.

The two remaining charges—criminal trespass and license to be in possession—were submitted to the jury. As it said it would, the court did not mention the acquitted prostitution charge while instructing the jury. Ayers did not object to the instructions, nor did he offer an instruction notifying the jury of the directed verdict. The jury found Ayers guilty on both counts and recommended a $250 fine for the trespass charge and a $500 fine and 90 days' imprisonment for the license charge. On November 13, 2014, the district court adopted the jury's sentencing recommendation but would conditionally discharge the $500 fine and 90-day sentence for the license conviction after two years.

Ayers appealed his case to the Jefferson Circuit Court, which affirmed the judgment of the Jefferson District Court. One of the challenges Ayers raised was whether the district court erred by failing to give a peremptory instruction that he had been acquitted of the prostitution charge. In its order affirming his conviction, the circuit court held that the district court erred by allowing Griffin's testimony at the second trial, but that the testimony did not prejudice Ayers. The circuit court never addressed whether the district court had a *sua sponte* obligation to instruct the jury of the directed verdict. Ayers then appealed his case to the Kentucky Court of Appeals and the Kentucky Supreme Court, which both denied discretionary review.

On November 15, 2017, Ayers filed in the Western District of Kentucky a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. He raised three grounds for relief. A Magistrate Judge reviewed his arguments and recommended denying his petition on all three grounds. Additionally, the Magistrate Judge recommended that a certificate of appealability be denied for two of the three grounds but granted as to whether the district court should have instructed the jury of the directed

verdict. On June 22, 2020, Ayers filed an astonishing 92-page objection requesting that the district court reject nearly every aspect of the Magistrate Judge's findings and recommendations. The district court overruled every objection and adopted the Report and Recommendation in full.

Ayers then brought his aggressive litigation tactics to the Sixth Circuit. He first asked this Court to expand the certificate of appealability to include all three grounds raised in his original habeas petition. This Court denied his motion on October 27, 2020. *Ayers v. Hargis*, No. 20-5918 (6th Cir. Oct. 27, 2020) (order), *reh'g en banc den.* (Dec. 29, 2020). By this point, over two years had lapsed since the judgment against him became final, and the sentence for his license in possession conviction has been discharged. With only the $250 fine for his trespass charge remaining, Appellees sought to dismiss the case as moot because Ayers was no longer subject to a custodial sentence. On June 30, 2021, a motions panel denied Appellees' motion to dismiss as moot on grounds that Ayers' conviction, if sustained, could pose collateral consequences. *Ayers v. Hargis*, No. 20-5918 (6th Cir. June 30, 2021) (order).

## II. STANDARD OF REVIEW

This Court reviews the federal district court's denial of Ayers' habeas petition *de novo*. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020). Therefore, like the district court, this Court's review of Ayers' petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254. Typically, federal courts may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d). The requirements under § 2254(d) are demanding, but they are only implicated when a claim was "adjudicated on the merits." *Id*.; *see, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 101 (2011). When a state court does

not adjudicate the petitioner's claims on the merits, AEDPA deference does not apply, and the claim is reviewed *de novo*. *Stermer*, 959 F.3d at 721. But "[w]hen a federal claim has been presented to a state court and the state court has denied relief," a rebuttable presumption arises that the claim was adjudicated on the merits. *Richter*, 562 U.S. at 99.

Ayers argued before the Jefferson Circuit Court that "the [district] court below failed to give *sua sponte* a mandatory peremptory instruction on the directed verdict." (Appellant's Statement of Appeal, R. 14-4, Page ID ## 271–72.) In its order affirming the district court, the Jefferson Circuit Court denied Ayers relief; but in doing so, it never addressed whether the trial judge had a duty to *sua sponte* give a peremptory instruction. Moreover, the Kentucky Court of Appeals and the Kentucky Supreme Court denied discretionary review of Ayers' claim.

The district court held, and the parties agree on appeal, that Ayers' habeas claim should be reviewed *de novo*. Although we have doubts as to whether *de novo* review is appropriate, *see Johnson v. Williams*, 568 U.S. 289, 298 (2013), we need not resolve that question because even assuming that Ayers is entitled to the less deferential *de novo* standard, he would not be entitled to habeas relief.

## III. ANALYSIS

Federal courts reviewing habeas petitions are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *accord* 28 U.S.C. § 2254(a). In rare circumstances, violations of state law may warrant habeas relief, but the petitioner "must show that the trial judge not only misread state law but also misread it so badly that it violated the [Constitution]." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020). Further, a petitioner is not entitled to habeas relief unless an error has occurred that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice,

[or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Reed v. Farley*, 512 U.S. 339, 353–55 (1994) (extending the reasoning of *Hill* to habeas petitions filed under § 2254).

In addition to the general rules regarding habeas petitions, claims arising from allegedly erroneous jury instructions are subject to heightened scrutiny. The Supreme Court has cautioned that the category of jury instructions that rise to the level of violating due process is to be drawn "very narrowly." *McGuire*, 502 U.S. at 72–73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). When the alleged error is the omission of an instruction, the petitioner's "burden is especially heavy because . . . [a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In essence, the relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

Turning first to Ayers' state law arguments, it can hardly be said the Jefferson District Court committed any error. Ayers alleges that the trial judge erred because Kentucky law requires district courts to give certain peremptory instructions. He relies primarily on a book of model jury instructions and a rule of criminal procedure. The book of model jury instructions on which he relies states, "It is elementary that a peremptory instruction should be given when the evidence does not prove a public offense." William S. Cooper & Donald P. Cetrulo, *Kentucky Instructions to Juries*, Criminal § 1.05[D] (5th ed. 2006). To support this proposition, the book's authors cite to *Sizemore v. Commonwealth*, 147 S.W.2d 56, 59 (Ky. 1941). In *Sizemore*, the Kentucky Supreme Court held:

> [I]n a criminal prosecution it is the duty of the Court to give all instructions that the testimony authorizes from any viewpoint, whether the defendant asked for them or not. Under that rule it was the duty of the Court to give a peremptory instruction

> regardless of the fact that defendant did not request it; provided the testimony did not prove a public offense.

*Id.* In the 80 years since *Sizemore*, the case has been cited only twice. *See Fugate v. Commonwealth*, 445 S.W.2d 675, 682 (Ky. 1969), *overruled by Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983); *Riddle v. Howard*, 357 S.W.2d 705, 707 (Ky. Ct. App. 1962) (citing *Sizemore* for a different proposition of law).

There are two problems with Ayers' reliance on *Kentucky Instructions to Juries*. The first, and more obvious, problem is that a book of model jury instructions is not binding authority on a district court judge. The second, more nuanced, problem is the book's reliance on *Sizemore*. There are serious questions as to whether *Sizemore* has been overruled. In 2012, 70 years after *Sizemore* was decided, the Kentucky Court of Appeals directly addressed the issue of whether a trial court must provide a mandatory peremptory instruction of a directed verdict. It held: "The trial court has the *discretion* to advise the jury that it has entered a directed verdict against a party." *McGill v. Clay*, No. 2010-CA-001280-MR, 2012 WL 28685, at \*3 (Ky. Ct. App. Jan. 6, 2012) (citing *Hanson v. Am. Nat'l Bank & Tr. Co.*, 865 S.W.2d 302, 307 (Ky. 1993), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky. 2002)) (emphasis added). The degree to which *McGill*, which is a civil case, applies to Ayers' case, which is, of course, criminal, is unclear. However, at a minimum, it casts doubt on Ayers' argument that the failure to instruct the jury *sua sponte* was erroneous. Certainly, the Jefferson District Court's application of state law was not so outlandish that it rises to the level of a due process violation. *Keahey*, 978 F.3d at 478.

Ayers next argues the Kentucky Rules of Criminal Procedure support his argument that the trial court should have instructed the jury of its directed verdict. Rule 9.54(1) provides, "It shall be the duty of the court to instruct the jury in writing on the law of the case." Ky. R. Cr. P. 9.54(1).

However, subsection two goes on to state, in pertinent part, that "[n]o party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge . . . ." Ky. R. Cr. P. 9.54(2). The record indisputably proves that Ayers did not object to the jury instructions, nor did he offer an instruction notifying the jury of the directed verdict. Thus, his reliance on Rule 9.54(1) is misplaced.

Ayers relatedly argues that any consideration of Rule 9.54(2) would violate *Cone v. Bell*, 556 U.S. 449 (2009). Essentially, he argues that because the state courts never dismissed his claim for failing to object to the jury instructions, this Court must respect the state court's decision, and therefore not dispose of his argument for failing to object. *See Cone*, 556 U.S. at 468 ("When a state court declines to find that a claim has been waived by a petitioner's alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same."). *Cone* simply requires this Court to follow the state court's decision as to whether a claim has been procedurally defaulted. It does not close the door for this Court when the state remains silent. 556 U.S. at 468–69 (holding federal courts "have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so."). The Jefferson Circuit Court made no determination as to whether Ayers' claim was procedurally defaulted, thus this Court has no obligation under *Cone* to assume that a procedural bar applies. He seems to misunderstand that this Court can decide his case, or at least one argument, on a procedural rule without finding his claim has been procedurally defaulted. And to be clear, his claim was not procedurally defaulted. *See Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020).

Because the laws of Kentucky do not demonstrate that any error occurred and Ayers does not cite any federal laws or treaties that entitle him to relief, for his petition to succeed he must direct the Court to a rule of constitutional law that warrants relief. Primarily, he relies on *Estelle*

*v. Williams*, 425 U.S. 501 (1976), to argue that he has been denied the right to a fair trial. In that case, the state of Texas charged defendant Harry Williams with assault with intent to commit murder with malice. *Id*. at 502. Williams asked an officer at the jail for civilian clothes to wear to his trial, but his request was denied. *Id*. He attended his trial in what was clearly prison-issued attire, but he never objected to his clothing. *Id.* Williams was found guilty and the Texas Court of Criminal Appeals affirmed his conviction. *Id*. at 503. He then filed a habeas petition challenging whether it was constitutional for him to be tried while wearing identifiable prison clothing. *Id*.

The Supreme Court denied Williams habeas relief. The Court began by acknowledging that the presumption of innocence "is a basic component of a fair trial." *Id*. And while "courts must be alert to factors that may undermine the fairness of the fact-finding process," *id*., sometimes they cannot avoid factors that mar the presumption of innocence, *id*. at 505. For example, sometimes criminal defendants must be shackled or gagged, "yet the Court upheld the practice when necessary to control a contumacious defendant." *Id*. (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). And because wearing prison clothes at trial "furthers no essential state policy," defendants cannot be compelled to wear it. *Id*. Ultimately, however, the Court denied Williams habeas relief because "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512–13.

Ayers relies on this case extensively, but it actually cuts against him. Not only does *Williams* permit certain types of trial conduct that may undermine the presumption of innocence (i.e., when necessary to control a defendant or to further an essential state policy), it holds that claims based on conduct that undermines the presumption of innocence can be waived if no

objection is lodged. There is no dispute that Ayers did not object to the jury instructions, so the idea that he has been denied a fair trial is inconsistent with *Williams*. Additionally, the district court specifically instructed the jury that they were to presume Ayers was innocent, and juries are presumed to follow instructions. *Saulsberry v. Lee*, 937 F.3d 644, 649 (6th Cir. 2019) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

A larger problem with Ayers' constitutional argument is that none of the authority on which he relies suggests that the failure to instruct the jury was such a grave error that he is entitled to habeas relief. As mentioned above, erroneous jury instructions rarely rise to the level of a due process violation, and that standard is especially hard to meet when a claim is based on omitted instructions. *McGuire*, 502 U.S. at 73; *Kibbe*, 431 U.S. at 155; *cf. Neder v. United States*, 527 U.S. 1, 9 (1999) (holding on direct appeal that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair").

None of the authority Ayers cites comes remotely close to suggesting that the Constitution requires state court judges to instruct juries of directed verdicts even when the defendant does not ask for such instruction. In fact, there is good reason to hold that the Constitution does not require such *sua sponte* instructions. As the Supreme Court reasoned in *Williams*, "once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." 425 U.S. at 512. Some defendants may have reasons they do not want the jury to know the court has entered a directed verdict. To grant Ayers the relief he seeks, this Court would close the door on future defendants who wish to keep their mid-trial acquittals quiet.

Finally, the omission of the directed verdict instruction does not "result[] in a complete miscarriage of justice." *Hill*, 368 U.S. at 428. Here, the evidence at trial clearly supported Ayers' conviction on the trespass and license to be in possession charges. The undisputed evidence offered at trial established that officers advised Ayers he needed to leave the vacant lot. Ayers testified in his own defense that he refused to leave unless he could drive himself home. "A person is guilty of criminal trespass in the third degree when he knowingly . . . remains unlawfully in or upon premises," Ky. Rev. Stat. § 511.080, thus, the evidence overwhelmingly supports his conviction on this charge. Regarding his license to be in possession charge, the statute provides:

> The licensee shall have his or her license in his or her immediate possession at all times when driving a motor vehicle and shall display it upon demand . . . . It shall be a defense to any charge under this section if the person so charged produces in court an operator's license, issued to him or her before his or her arrest and valid at the time of his or her arrest.

*Id*. § 186.510. Here, the undisputed evidence offered at trial established that Ayers' drove to the vacant lot, officers approached the vehicle while it was still running, officers asked Ayers for his license, which he did not have in his possession, and that Ayers did not have a valid driver's license from any jurisdiction on the night of his arrest. Like his trespass charge, the evidence overwhelmingly supports his license to be in possession conviction.

We AFFIRM.